**ANDERSON & KARRENBERG, LLC**
Jared D. Scott (#15066)
50 West Broadway, Suite 600
Salt Lake City, Utah 84101-2035
jscott@aklawfirm.com
*Local Counsel for Plaintiff*

**JOHNSON BECKER, PLLC**
Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
jrusch@johnsonbecker.com
zkaylor@johnsonbecker.com
*Lead Attorneys for Plaintiff*
*\*Pro Hac Vice forthcoming*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| NICOLE FITZGERALD, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>UNIVERSITY OF UTAH d/b/a UNIVERSITY OF UTAH HEALTH,<br><br>Defendant. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Nicole Fitzgerald, by and through her undersigned attorneys, and hereby brings this Collective and Class Action Complaint against Defendant, University of Utah d/b/a University of Utah Health, and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought by Plaintiff on behalf of herself and all similarly situated current and/or former Customer Advocate Specialist, Communications Services Specialist, and/or other job titles performing the same or similar job duties (collectively "Specialists"), employees of Defendant to recover for Defendant's willful violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Utah Payment of Wages Act, Utah Code Ann. §§ 34-28, *et seq.*

2.  The U.S. Department of Labor ("DOL") recognizes that call center jobs, like the one held by Plaintiff, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3.  Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of failing to compensate its call center employees for their necessary boot-up and call ready work, which resulted in the failure to properly compensate them as required under applicable federal and state law.

4.  Plaintiff seeks a declaration that her rights, the rights of the FLSA Collective, and the rights of the UPWA Class were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which she and the putative Collective and Class may be entitled.

**JURISDICTION AND VENUE**

5.  This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq.*

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9. Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in Utah and employs individuals in Utah.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and Defendant is subject to the Court's personal jurisdiction in this District.

**PARTIES**

12. Plaintiff is an individual who resides in South Jordan, Utah. Plaintiff worked for Defendant as a Customer Advocate Specialist from January 2022 to May 2024. Plaintiff executed her Consent to Sue form, attached hereto as Exhibit B.

13. Defendant is a public university with its principal place of business in Utah.

14. Defendant does business as University of Utah Health, where it operates five hospitals and twelve community health care centers as part of its healthcare system. *See About University of Utah Hospitals & Clinics*, University of Utah Health, https://healthcare.utah.edu/about.

15. Defendant employs Customer Advocate Specialist, Communications Services Specialist, and/or other job titles performing the same or similar job duties in Utah. *See* Job Posting, attached hereto as Exhibit C.

16. Defendant's call center employees provide general customer service and scheduling services on behalf of Defendant's patients and providers.

17. The only authorized agent for service of legal process (such as a summons and complaint) for the University of Utah and the University of Utah Hospitals and Clinics is the President of the University. *See Lawsuits & Complaints FAQs*, Office of the General Counsel, https://legal.utah.edu/faq/lawsuits.php.

18. President Taylor R. Randall may accept service on behalf of the University of Utah at 201 Presidents Circle, Salt Lake City, Utah 84112.

## **GENERAL ALLEGATIONS**

19. Defendant employed Plaintiff as an hourly Customer Advocate Specialist. Defendant assigns Specialists, like Plaintiff, to receive inbound calls from Defendant's patients.

20. Plaintiff's primary job duties as a Specialist included answering calls from patients seeking to schedule appointments and seeking to communicate with medical providers.

21. Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked at least 40 hours per workweek.

4

22. Regardless of whether Defendant scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of her job duties as a Specialist. Defendant never compensated Plaintiff for this necessary time worked off-the-clock.

23. 29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### A.  *Unpaid Boot-Up and Call Ready Work.*

24. Defendant tasked Plaintiff with providing customer service on behalf of Defendant's patients by use of Defendant's equipment, including its computer, telephone, and computer programs.

25. To access Defendant's systems, Plaintiff, and all other current and/or former Specialists, must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications. Once this boot-up and call ready work is completed, Plaintiff, and all other current and/or former Specialists, must log in to Defendant's phone system to take their first call at their scheduled shift start time.

26. Defendant does not compensate Plaintiff, and all other current and/or former Specialists, until they have clocked into the timekeeping program accessible on Defendant's computer.

27. The boot-up and call ready work regularly takes up to 10 minutes per shift, or more if technical issues arise. Defendant did not compensate Plaintiff for this time.

28. Regardless of how long the boot-up and call ready work takes, Defendant did not allow Plaintiff, and all other current and/or former Specialists, to clock in before completing all boot-up and call ready work.

5

29. The boot-up and call ready work Plaintiff, and all other current and/or former Specialists, must complete before they begin being compensated is the same regardless of where they worked.

30. The boot-up and call ready procedure is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

31. Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former Specialists, directly benefits Defendant.

    **B.**     *Defendant's Policy and Practice of Off-the-Clock Work Violates Federal and Utah State Law.*

32. At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former Specialists, to routinely perform off-the-clock boot-up and call ready work by not compensating its employees until after they completed the boot-up and call ready procedure.

33. Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

34. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former Specialists, for their compensable boot-up and call ready work performed in any amount.

35. Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

36. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former Specialists, for their boot-up and call ready work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

6

37. For example, upon information and belief, during the workweek of January 23, 2023 to January 27, 2023, Defendant paid Plaintiff for over 40 hours of work. However, the hours Defendant paid Plaintiff did not include the boot-up and call ready work as alleged herein. Had Defendant properly paid Plaintiff for all hours worked during this pay period, then it would have paid her additional overtime wages equal to the uncompensated boot-up and call ready work.

38. Defendant is aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiff.

39. Defendant is aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiff. For example, Plaintiff's hourly rate for the exemplar week noted above was approximately $22.07 per hour.

40. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly Specialists working in Defendant's call center for their compensable boot-up and call ready work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper rates, including overtime premiums.

41. In reckless disregard of the FLSA and Utah state law, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former Specialists, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former Specialists, in violation of the FLSA and Utah state law.

### C. *Recordkeeping.*

42. 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

43. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

44. Utah wage and hour laws require that "[e]very employer shall keep a true and accurate record of time worked and wages paid each pay period to each employee who is employed on an hourly or a daily basis." Utah Code Ann. § 34-28-10.

45. Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Utah state law because it failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former Specialists' payroll records.

46. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

47. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the

8

FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## **COLLECTIVE ACTION ALLEGATIONS**

48.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Customer Advocate Specialist, Communications Services Specialist, and/or other job titles performing the same or similar job duties (collectively "Specialists"), who worked for the University of Utah at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.[1]

49.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

50.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The group of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its Specialist employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same

---

[1] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

9

legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

51. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

52. Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## UTAH WAGE AND HOUR LAW CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Customer Advocate Specialist, Communications Services Specialist, and/or other job titles performing the same or similar job duties (collectively "Specialists"), who worked for the University of Utah at any time in the last three years.*

(hereinafter referred to as the "UPWA Class"). Plaintiff reserves the right to amend this definition as necessary.[2]

---

[2] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

10

54. *Numerosity:* The members of the UPWA Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The precise number of members of the UPWA Class should be readily available from a review of Defendant's personnel and payroll records.

55. *Commonality/Predominance*: There is a well-defined community of interest among members of the UPWA Class and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Defendant violated Utah Code Ann. § 34-28-3 by failing to pay current and former employees for all wages earned;

    b.    The proper measure of damages sustained by the UPWA Class.

56. *Typicality*: Plaintiff's claims are typical of those of the UPWA Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other UPWA Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other UPWA Class members: whether all members of the UPWA Class were employed by Defendant on an hourly basis without receiving compensation for all wages earned.

57. *Adequacy*: Plaintiff will fully and adequately protect the interests of the UPWA Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of wage and hour collective and class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the UPWA Class.

58. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for

members of the UPWA Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Given the material similarity of the UPWA Class members' claims, even if each member of the UPWA Class could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

59. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant's payroll systems will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES
(FLSA Collective)

60. Plaintiff individually and on behalf of the proposed FLSA Collective, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

61. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

62. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

63. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

64. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

65. The positions of Customer Advocate Specialist and Communications Services Specialist are not exempt from the FLSA.

66. Defendant's other job titles performing similar call center job duties are not exempt from the FLSA.

67. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

68. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

69. Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

70. Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

71. Defendant's violations of the FLSA were knowing and willful.

72. By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant

violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated Customer Advocate Specialist, Communications Services Specialist, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to Customer Advocate Specialist, Communications Services Specialist, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

73. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Collective.

74. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF THE UTAH PAYMENT OF WAGES ACT
### (UPWA Class)

75. Plaintiff, individually and on behalf of the proposed UPWA Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

76. Plaintiff and members of the UPWA Class are current and former employees of Defendant within the meaning of Utah Code Ann. § 34-28-9.5.

77. Defendant at all relevant times was an employer within the meaning of Utah Code Ann. § 34-28-2.

78. Defendant was required to pay Plaintiff and the UPWA Class for all hours worked.

79. Utah Code Ann. § 34-28-3(1) requires every employer to pay all wages earned every pay period, including overtime pay.

80. Utah Code Ann. § 34-28-5(1) provides that when an employer discharges an employee or an employee quits, the employer must pay the employee all wages due in a timely manner.

81. Wages are defined as "the amounts due the employee for labor or services, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount." Utah Code Ann. § 34-28-2(1)(i).

82. Defendant, pursuant to its policies and illegal timekeeping practices, failed to pay Plaintiff and the UPWA Class for all hours worked.

83. By failing to properly compensate Plaintiff and the UPWA Class for all "labor or services" for which Plaintiff and the UPWA Class had a reasonable expectation of being paid, Defendant violated and continues to violate its Specialists' statutory rights under Utah Code Ann. §§ 34-28-3(1) and 34-28-5(1).

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the UPWA Class have suffered damages in an amount to be determined at trial.

85. Plaintiff is exempt from exhausting the administrative remedies described in § 34-28-9 because Plaintiff brings a collective and class action whereby the aggregate amount of the employees' combined wage claim is greater than $10,000.

86. Plaintiff and the UPWA Class seek damages in the amount of their unpaid straight-time and overtime wages for all hours worked, statutory interest and penalties described in Utah Code Ann. § 43-28-9.5(3), costs for this action, pre- and post- judgment interest, and such other legal and equitable relief as the Court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

    a.    An Order authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above;

    b.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective and class members of their rights under this litigation;

    c.    An Order certifying the UPWA Class pursuant to Fed. R. Civ. P. 23;

    d.    An Order designating Plaintiff to act as the Class Representative on behalf of the FLSA Collective and the UPWA Class;

    e.    An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

    f.    An Order declaring that Defendant violated its obligations under the FLSA;

    g.    An Order declaring that Defendant violated its obligations under the UPWA;

    h.    An Order granting judgment in favor of Plaintiff and the FLSA Collective against Defendant and awarding the amount of unpaid wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the Collective's regular rate multiplied by all hours that Plaintiff and the Collective worked in excess of 40 hours per week;

    i.    An Order granting judgment in favor of Plaintiff and the UPWA Class and against Defendant and awarding the amount of unpaid straight-time wages calculated at Plaintiff's and the Class member's regular rate of pay;

    j.    An Order awarding liquidated damages to Plaintiff and the FLSA Collective in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Collective under the FLSA;

    k.    An Order awarding the damages and penalties described in Utah Code Ann. § 43-28-9.5(3) to Plaintiff and the UPWA Class;

    l.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

      m.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

      n.      An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through her undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 5, 2025

Respectfully submitted,

/s/   Jared D. Scott
Jared D. Scott (#15066)
**ANDERSON & KARRENBERG, LLC**
50 West Broadway, Suite 600
Salt Lake City, UT 84101-2035
Telephone: (801) 534-1700
jscott@aklawfirm.com

*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*

*\*Pro Hac Vice forthcoming*